UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANNE DEFOT-SIDO,<br>    *Plaintiff-Appellant*<br><br>v.<br><br>JAMES ALEXANDER C. CARR and<br>VERONICA CARR,<br>    *Defendants-Appellees* | No. 1:23-cv-01476-MSN-LRV |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia's judgment in favor of Defendants-Appellee James and Veronica Carr. ECF 1. Because there is no reversible error, the Court will affirm.

**I.   BACKGROUND**

In early 2019, Plaintiff-Appellant Anne Defot-Sido contracted with Defendant-Appellee James Carr for home renovations. ECF 5-12 ("Summ. J. Order") at 2. By May 9, 2019, while the work was ongoing, Defot-Sido had "learned that [Carr] was not a licensed Virginia contractor." *Id.* Five days later, Carr "pulled his crew from the job site and sent [Defot-Sido] a text message suggesting that they 'part ways,' thereby effectively terminating the Contracts." *Id.* at 3.

Defot-Sido alleges that Carr's termination of the contracts caused "damages in the form of materials that she paid for that were not delivered, and the costs of hiring a new contractor to complete the work and to correct any defective work installed by [Carr]." Summ J. Order at 3. She also alleges that she "suffered personal injuries as a result of accidentally stepping into" a vent that Carr's subcontractors had left exposed but covered with paper. *Id.*

1

Defot-Sido filed a lawsuit against Carr in the Circuit Court of Fairfax County. Summ J. Order at 3. Carr thereafter filed a petition under chapter 7 of the Bankruptcy Code with the Bankruptcy Court. ECF 5-11 ("Mot. to Dismiss Op.") at 2.

Defot-Sido then filed a nine-count complaint in the Bankruptcy Court against Mr. and Mrs. Carr "for alleged violations of the Virginia Consumer Protection Act, fraud, as well as asserting fraudulent conveyance actions under Virginia law." *Id.* The Carrs moved to dismiss the complaint, and after the Bankruptcy Court dismissed all but one of the fraud claims, Defot-Sido filed an amended complaint alleging seven counts, which are the subjects of this appeal. *See* Mot. to Dismiss Op. at 2; ECF 5-2 ("FAC").

Counts I, II, and III alleged breaches of the Virginia Consumer Protection Act ("VCPA"). FAC ¶¶ 85-107; *see also* Va. Code Ann. § 59.1-200(A)(9), (10), (14), (46). Defot-Sido argued that damages under the VCPA were "nondischargeable under section 523(a)(2) of the Bankruptcy Code" because they "sound in fraud." Mot. to Dismiss Op. at 5; *see* 11 U.S.C. § 523(a)(2) (preventing the discharge of any debt obtained by "false pretenses, a false representation, or actual fraud").

Similarly, count IV alleged a common-law fraud claim that was also non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2). FAC ¶¶ 108-115. In this claim, she alleged that "Mr. Carr falsely represented to Ms. Defot-Sido that he and his [c]ompany were licensed to renovate residential properties as contractors in Virginia," and that these representations "were made with knowledge" that they were untrue. *Id.* ¶¶ 109, 111. Defot-Sido alleged that these false representations were made in order "to mislead [her] so she would hire" Carr, and that she did in fact hire him as a result, leading to damages to her person and her property. *Id.*

2

Counts V, VI, and VII sought to avoid the 2019 transfer of Carr's home "from Mr. and Mrs. Carr as tenants by the entirety to Mrs. Carr individually." Mot. to Dismiss Op. at 9. Count V alleged the transfer was done "with the intent and purpose of placing the house out of reach of Mr. Carr's creditors ... particularly Ms. Defot-Sido," in violation of Virginia Code § 55.1-400. *Id.* at 16. Count VI alleged that the transfer was void because it "was not done for consideration deemed valuable in law," in violation of Virginia Code § 55.1-401. *Id.* Count VII alleged that the 2019 transfer was void because a previous 2017 transfer, which had established the tenancy by the entirety, was itself invalid, and therefore both deeds "are of no effect." FAC ¶ 127. Defot-Sido argued that the property could not have been transferred in 2017 because it was "subject to a deed of trust." Mot. to Dismiss Op. at 11.

The Carrs moved to partially dismiss all the claims in the amended complaint, except for count IV, the common-law fraud claim that the Bankruptcy Court had declined to dismiss in the initial complaint.[1] Mot. to Dismiss Op. at 2-3. The Bankruptcy Court granted the motion and dismissed the remaining claims with prejudice. *Id.* at 16. It dismissed the VCPA claims (counts I, II, and II) because Defot-Sido failed to allege that, with respect to those claims, Carr had made a "knowingly false representation." *Id.* at 6-8. It dismissed counts V and VI because the property at the time of transfer was "held as tenants by the entirety" by both Mr. and Mrs. Carr, and therefore Defot-Sido had not stated a claim to challenge the transfer because, even if the transfer were invalid, she had not alleged "a joint debt owed by both spouses." *Id.* at 9-10. Finally, the Bankruptcy Court dismissed count VII because it did "not assert a legitimate basis for otherwise voiding the 2017 and 2019 Deeds." *Id.* at 11.

---

[1] The Carrs also filed a counterclaim against Defot-Sido for breach of contract, which the Bankruptcy Court dismissed and has not been appealed. Mot. to Dismiss Op. at 15.

The Carrs then moved for summary judgment on count IV. Summ. J. Order at 1. Count IV included both personal-injury damages and contract-based damages related to the alleged fraud. *Id.* at 1, n.1. The Bankruptcy Court granted summary judgment to the Carrs as to the personal-injury claim because "there is no causal connection between [Carr's] lack of a Virginia contractor's license and the injuries suffered by the Plaintiff." *Id.* at 6. It denied summary judgment as to the contract-based portion of the claim, which proceeded to trial. *Id.* at 8.

Accordingly, the sole issues before the Bankruptcy Court at trial were whether Carr had made knowingly false representations "that he and his [c]ompany were licensed to renovate residential properties as contractors in Virginia;" whether "Defot-Sido reasonably relied" on those representations when hiring him to work on her property; and whether as a result, Defot-Sido suffered "damage to her Property and financial losses." FAC ¶¶ 108-115.

At trial, Defot-Sido testified that her eight- or nine-year-old daughter told her "that Mr. Carr was a licensed contractor." ECF 4-1 ("Sept. 8 Tr.") at 166:1-7. But she could not recall Carr ever directly telling her he had a contractor's license. *Id.* at 165:6-11. The Bankruptcy Court found that "[a]lthough Ms. Defot-Sido believed Mr. Carr was a contractor based on what she knew of him, she could not remember whether he ever mentioned having a contractor's license. She stated merely that she assumed he was licensed." ECF 4-1 ("Oct. 10 Tr.") at 54:9-12. Because Defot-Sido had failed to prove that Carr had made a fraudulent misrepresentation that he was licensed, the Bankruptcy Court entered judgment in favor of the Carrs. *Id.* at 57:15-20.

Defot-Sido now appeals each of these defeats in the Bankruptcy Court. She appeals the dismissals of her VCPA claims (counts I-III) and her challenges to the property transfer (counts V-VII). ECF 5 ("Appellant Br.") at 1-2. She also appeals the entry of summary judgment as to the

4

personal injury damages within count IV, as well as the Bankruptcy Court's finding at trial "that [Carr] did not misrepresent his status as a contractor." *Id.* at 2.

## II.   STANDARD

The Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *Terry v. Meredith (In re Meredith)*, 527 F.3d 372, 375 (4th Cir. 2008) (citations omitted). Accordingly, the Court will review the claims dismissed by the Bankruptcy Court—counts I, II, III, V, VI, and VII—*de novo*. The Court will also review *de novo* the legal conclusions reached below pertaining to count IV but will review the Bankruptcy Court's factual findings on that count for clear error.

## III.   ANALYSIS

The Bankruptcy Court's judgment will be affirmed. Starting with the Bankruptcy Court's findings at trial, it did not clearly err in finding that Carr did not misrepresent to Defot-Sido that he was a licensed contractor. Therefore, even if the Bankruptcy Court had erred in previously dismissing the VCPA claims (counts I-III), any error was harmless because ultimately Defot-Sido had to prove that Carr made a knowing misrepresentation to her to establish that her damages were nondischargeable. Finally, the Bankruptcy Court did not err in dismissing the house-transfer claims. As the Bankruptcy Court held, the 2019 transfer is immaterial to Defot-Sido, and she has not alleged that the 2017 was invalid.

### A.   The fraud claim (count IV)

The Bankruptcy Court did not clearly err in finding that Defot-Sido had failed to prove that Carr misrepresented that he had a contractor's license. Defot-Sido testified on direct examination that while her "impression" was that he was "a licensed contractor," she was "not 100% sure" whether Carr ever stated that he was licensed. Oct. 2 Tr. 70:15-20. On cross examination, when

5

asked how it was "implied that [Carr] was licensed," Defot-Sido stated that "if you call yourself a contractor, you are licensed." *Id.* at 163:7-10. But she could not recall whether Carr ever used the word licensed. Defot-Sido also stated that her eight- or nine-year-old daughter told her Carr was licensed, which she "remember[s] … because that was unusual for this – for this age." *Id.* at 165:22-166:9. Based on this submission of evidence, and without even reaching the counter evidence provided by the Carrs, the Bankruptcy Court's finding that Carr did not misrepresent that he was licensed was not clearly erroneous.

These facts are materially different than the cases Defot-Sido relies upon. In *Pleasants*, for example, the debtor knew that people thought he was a licensed architect and did not correct the misrepresentation. *In re Pleasants*, 231 B.R. 893, 898 (Bankr. E.D. Va. 1999), *aff'd*, 219 F.3d 372 (4th Cir. 2000). And in *Bozzano*, the debtor falsely used the license number of another general contractor to obtain a permit to do work that only a licensed contractor could do. *In re Bozzano*, 173 B.R. 990, 994 (Bankr. M.D.N.C. 1994).

The facts here sharply contrast to those cases. Carr had significant experience in home renovation for houses in his real estate business; he agreed to use those skills to help Defot-Sido, a friend, with her home renovation; no witness testified that Carr ever stated he had a contractor's license; after Defot-Sido learned that Carr did not have a license, she continued to ask him to work on the house; and after Carr learned that he might have needed a license to do the project, he took the test within a week a passed. Oct. 2 Tr. 39:10-45:11; Oct. 6 Tr. 125:13-127:8. The Bankruptcy Court's conclusion that Carr did not have "an affirmative duty to disclose his lack of licensure" to avoid making a misrepresentation was appropriate. Oct. 10 Tr. 56:4-7.[2]

---

[2] Because the Court affirms the Bankruptcy Court's factual finding that Carr did not defraud Defot-Sido, the Court need not analyze the Bankruptcy Court's grant of partial summary judgment as to the personal-injury aspect of count IV.

## B. The VCPA claims (counts I-III)

Defot-Sido brought claims under various provisions of the VCPA, which set forth requirements for "suppliers" for the benefit of consumers. In count I, Defot-Sido alleged that Carr violated Va. Code § 59.1-200(A)(46), which prohibits a supplier from "[c]ontracting for, or bidding upon the construction, removal, repair or improvements to or upon real property owned, controlled or leased by another person without a license." In count II, she alleged that Carr violated Va. Code § 59.1-200(A)(9) and (10), which prohibits a supplier from "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" and "[m]isrepresenting that repairs, alterations, modifications, or services have been performed or parts installed." And in count III, she alleged that Carr violated Va. Code § 59.1-200(A)(14), which prohibits a supplier from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Defot-Sido alleged that all the damages associated with these claims were nondischargeable under 11 U.S.C. § 523(a)(2) because they "sound in fraud." FAC ¶¶ 91, 99, 107.

The Bankruptcy Court dismissed counts I-III because, in its view, Defot-Sido had not alleged that Carr made "a knowingly false representation," which is required to establish that a claim is nondischargeable under Section 523(a)(2)(A). Mot. to Dismiss at 5-8. It noted, however, that Defot-Sido "properly pled these missing elements in Count 4." *Id.* at 6.

While the Court declines to take as formalistic of a view of the Amended Complaint as the Bankruptcy Court did, the Court will affirm the dismissal of counts I-III. The Carrs make several arguments in support of dismissal of the VCPA claims, but the Court need not consider all of them. Even assuming that Carr was a "supplier" for purposes of the VCPA and that he was bound by its requirements, Defot-Sido failed to state a violation under count II. And even if the Bankruptcy

7

Court erred by dismissing counts I and III before trial, that error was ultimately harmless because the Bankruptcy Court did not clearly err in finding at trial that Carr did not make a fraudulent misrepresentation to Defot-Sido, which is required to establish that the damages associated with the violations were nondischargeable. *See In re Romano*, 2019 WL 5204455, at *4 (Bankr. E.D. Va. Oct. 15, 2019) (citing *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999)).

In count II, Defot-Sido failed to state a violation of Va. Code § 59.1-200(A)(9)-(10) because she did not allege a misrepresentation by Carr concerning "price reductions" or the "services [that] have been performed." Defot-Sido makes the bare allegation that Carr made false statements "regarding the value he purportedly was conveying to her when abandoning the Project" and "that he had completed parts of the Project when he had not, or had not done so in a workmanlike manner," but she does not make any further allegations to expound on those conclusory statements. FAC ¶¶ 95-96. To the contrary, elsewhere in the Amended Complaint, Defot-Sido alleges that Carr "said that he would forego any amounts he believed he was still owed" and was "supposedly giving her $14,000 in value she could use to retain another contractor." FAC ¶¶ 57-58. And while Defot-Sido ultimately hired another contractor to finish the job, she does not allege that those specific statements were not true. Accordingly, Defot-Sido failed to state a claim under count II.

Counts I and III turn on allegations that Carr misrepresented that he was a licensed contractor. Although the Bankruptcy Court held that Defot-Sido did not plead that Carr made a knowing misrepresentation for these claims, the Court agrees with Defot-Sido that she did properly state a claim under counts I and III. Earlier in the Amended Complaint, she alleges that Carr "told Ms. Defot-Sido he was a Virginia-licensed contractor with 30 years of experience performing residential renovations" (FAC ¶ 14); that "[r]elying on Mr. Carr's statements and representations,

8

[she] hired him" as a contractor to renovate her home (*id.* ¶ 15); and that Carr ultimately abandoned the project and left the home "in deplorable and unsafe condition," causing her personal injuries and economic damages (*id.* ¶ 56). But the violation of count III, and the nondischargeability of count I, both require that Carr in fact made a knowing misrepresentation to Defot-Sido that he was a licensed contractor. As explained above, the Bankruptcy Court did not clearly err in finding that Carr did not make such a misrepresentation. Accordingly, Defot-Sido cannot prevail on either claim, and the dismissal of counts I and III was harmless. *See* 28 U.S.C. § 2111; *Stevens v. Showalter*, 458 B.R. 852, 855 (D. Md. 2011) ("[E]ven when a bankruptcy court commits an error of law or makes a clearly erroneous factual finding, its error will not result in reversal so long as the reviewing district court concludes that the error was harmless.").

### C. The house-transfer claims (counts V-VII)

Counts V-VII seek to establish that the Carrs' home, which in 2017 was transferred to Mr. Carr and his wife as tenants by the entirety, and in 2019 was transferred to Mrs. Carr individually, is part of Mr. Carr's bankruptcy estate. The Bankruptcy Court held, as to counts V and VI, that Defot-Sido "has not alleged that she held a joint debt of Mr. and Mrs. Carr at the time of the transfer" of the Carrs' home as tenants by the entirety to Mrs. Carr individually, and therefore she could not state a claim under Va. Code §§ 55.1-400, 55.1-401. Mot. to Dismiss Op. at 9-10. Rather than challenging that conclusion, Defot-Sido now argues that the Bankruptcy Court erred because it failed to consider whether the Carrs' 2017 transfer—in which Mr. Carr's home was transferred to the Carrs as tenants by the entirety—was valid. Appellant Br. at 15. But this argument does not save Defot-Sido's claim because the 2017 transfer was valid. Nor has Defot-Sido stated a claim in count VII that would establish the home is a part of Mr. Carr's bankruptcy estate. Accordingly, the dismissal of counts V-VII will be affirmed.

As to count V, under Virginia Code § 55.1-400, a transfer may be fraudulent if it "was made in anticipation of future indebtedness" to a subsequent creditor. *Gray v. McCormick*, 23 S.E.2d 803, 807 (Va. 1943). Specifically, the statute provides that any transfer made "with intent to delay, hinder, or defraud creditors, purchasers, or other persons" shall be "void." Va. Code § 55.1-400. Defot-Sido alleged that the 2017 transfer was done with the intent of "placing the house out of reach" of Mr. Carr's creditors, including Defot-Sido. FAC ¶ 117.

This allegation is implausible straight out of the gate, however, because Defot-Sido did not provide any factual allegations to support the conclusory assertion that the transfer was made to defraud subsequent creditors such as herself. At the time of the 2017 transfer, Defot-Sido and Carr had not entered into any agreement; in fact, Defot-Sido did not even plan to purchase a new home until "mid-2018." FAC ¶ 8. In order to state a claim as a subsequent creditor, Defot-Sido must "show that a prospective fraud was *contemplated and directed against h[er]*." *Grayson v. Westwood Bldgs. L.P.*, 859 S.E.2d 651, 667 (Va. 2021) (quoting *Gray*, 23 S.E.2d at 807) (emphasis added). "This burden is not an easy one to shoulder," and Defot-Sido falls far short. *Grayson*, 859 S.E.2d at 667. As the Bankruptcy Court correctly recognized, she failed to allege any facts that might demonstrate that Carr made the 2017 transfer "with an intent to put the property out of the reach of" future debts to Defot-Sido. *Id.*; *see* Mot. to Dismiss Op. at 12 ("Other than a conclusory statement … the Complaint provides no allegations of Mr. Carr's fraudulent intent as it would relate to subsequent creditors.").

Rather than allege that at the time of the 2017 transfer, Carr contemplated incurring debts which he did "not intend to pay" (*Grayson,* 859 S.E.2d at 667), Defot-Sido instead asks the Court to "infer an intent by Mr. Carr" to defraud future creditors because he "did not carry contractor liability insurance" and was not licensed (Appellant Br. at 17). This is not a reasonable inference,

10

however, because Carr and Defot-Sido did not discuss a contract until June 2018, roughly a year after the transfer. FAC ¶ 13. The Court therefore affirms the Bankruptcy Court's dismissal of count V because Defot-Sido failed to sufficiently allege that the 2017 transfer was made "with the intent to defraud future creditors." Mot. to Dismiss Op. at 12.

Defot-Sido's arguments fail as to count VI as well. Under Virginia Code § 55.1-401, a transfer "that is not upon consideration deemed valuable in law … shall be void as to creditors whose debts were contracted at the time such … transfer … was made." Defot-Sido again argues that the Bankruptcy Court erred by "ignoring the 2017 part of the transfer" (Appellant Br. at 15), but the plain text of the statute forecloses the relevance of the 2017 transfer because the provision does not apply "to creditors whose debts have been contracted…after such … transfer … was made." Va. Code Ann. § 55.1-401. Because Defot-Sido did not contract a debt with Carr until after the 2017 transfer, the Court affirms the dismissal of count VI.

Finally, as to count VII, Defot-Sido argues that because Carr conveyed a Deed of Trust on the property in 2014, he could not legally transfer the property in 2017 to him and his wife as tenants by the entirety. FAC ¶ 127. But under Virginia law, "[t]he grantor [of a deed of trust] retains his ability to deal with the encumbered property as its owner." *High Knob Assocs. v. Douglas*, 457 S.E.2d 349, 352 n.4 (Va. 1995); *see also Interstate R.R. Co. v. Roberts*, 104 S.E. 463, 464 (Va. 1920) ("The essence of a mortgage or deed of trust is that it creates a lien on property to secure a debt"). Therefore, the Deed of Trust did not prevent Carr from transferring the property in 2017, and the Court will affirm the dismissal of count VII.[3]

---

[3] Defot-Sido also argues that the 2017 transfer was void because it improperly included Mrs. Carr's name as a transferor and because there was also a Deed of Trust executed the same day which described their interest as "joint tenants with full rights of survivorship." Appellant. Br. at 20. The Court need not engage with these arguments, however, because count VII comes nowhere near putting the Carrs on notice of these legal theories. Instead, count VII is premised on the theory that at the time of the 2017 transfer, "all rights, title, and interests in [the property] were held by Shaza L. Andersen and George W. Connors"—not Mr. Carr—because of the 2014 Deed of Trust.

In short, all three of these claims turn on the validity of the 2017 transfer. Because Defot-Sido has not stated a plausible claim as to why the 2017 transfer may be invalid, the Bankruptcy Court correctly dismissed them.

* * *

Accordingly, it is hereby

**ORDERED** that Appellant's appeal is **DENIED** and the judgment of the Bankruptcy Court is **AFFIRMED**.

The Clerk is directed to close this action.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
August 14, 2024